**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **ENRICO E.M. BROWN,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Action No. MJM-25-3301** |
| **DIRECTOR TERRENCE K. CLARK, *et al.*,** | * | |
| **Defendants.** | * | |

**********************************************************

| | | |
|---|---|---|
| **ENRICO E.M. BROWN,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil Action No. MJM-26-1183** |
| **TERRENCE CLARK, *et al.*,** | * | |
| **Defendants.** | * | |

**********************************************************

**MEMORANDUM OPINION**

Self-represented plaintiff Enrico E.M. Brown, a prisoner who is confined to the Prince George's County Detention Center ("PGCDC"), filed the above-referenced civil rights actions. Brown's first civil rights action was closed for a failure to either pay the filing fee or file a motion seeking its waiver, but the case was reopened when the Court received his amended complaint and motion to proceed *in forma pauperis* on November 14, 2025. Civil Action No. MJM-25-3301 (hereinafter, "*Brown I*"), ECF No. 5. The second civil rights action was filed on March 20, 2026, together with a motion to proceed *in forma pauperis*. Civil Action No. MJM-26-1183 (hereinafter, "*Brown II*"), ECF Nos. 1 & 2. Both cases concern a litany of complaints regarding conditions alleged to exist at PGCDC. As explained below, *Brown I* fails to state a claim upon which relief may be granted and must be dismissed; *Brown II* will be permitted to proceed on a limited number

of the claims raised only after Brown files an amended complaint that complies with the Federal Rules of Civil Procedure.

## I. PLAINTIFF'S CLAIMS

### A. *Brown I*

In his 36-page amended complaint in *Brown I*, Brown raises claims regarding access to PGCDC's grievance procedure and to the law library. ECF No. 6. He repeatedly references other inmates or detainees who he claims are also denied forms and denied requests for legal materials by the law librarian or denied the opportunity to go to the library.

With respect to the grievance procedure, Brown claims that PGCDC staff are not issuing forms when they are requested; not accepting grievances when submitted or attempting informal resolutions; not allowing Brown to talk to a ranking officer; are confiscating grievances; and refusing to provide copies of grievances. He claims the inmates in his housing unit were threatened with 72 hours of lockdown as retaliation for filing grievances regarding various issues around the detention center. ECF No. 6 at 12–15.

With respect to law library access, Brown claims that he mailed a motion on September 19, 2025, "to discharge and strike order" and enter his appearance pro se to dismiss counts 1, 2, 7, and 8 in Maryland District Court for Prince George's County criminal case number D-05-CR-25-006880, but as of October 16, 2025, his motion had not been received. *Id*. at 17. Brown concludes that the warden directed unknown officers to confiscate his legal mail as a retaliatory act against him because he is a jailhouse lawyer. *Id*. He claims that had his motion been received, charges against him would have been dismissed because, under Maryland law, a motor vehicle does not include a motor scooter. *Id*. at 19. Brown adds that the law librarian denied him access to courts by denying his request for a copy of a case and other requests for copies of specific legal treatises

and constitutional provisions. *Id*. at 26. He states that the law librarian's conduct restricts access to courts "as well as other(s) in current circumstance(s) in which I provide help to." *Id*.

### B. *Brown II*

The complaint in *Brown II* is 99 pages long and includes a list of 54 signatures of "plaintiffs" who are also detainees at the detention center.[1] ECF No. 1-1 at 6–8. Brown repeats his claims regarding restrictive law library policies at the detention center as well as the claim that grievance forms are not distributed when requested by detainees, as stated in *Brown I*, and again claims these practices are unconstitutional. *Id*. at 4–8.

Brown adds to the claims raised in his first complaint, a claim regarding religious food services and a claim regarding conditions as they existed in his housing unit at the detention center on or about February 24 through March 4, 2026. Specifically, Brown claims that Summit Food Service's food policy is affecting his health because it fails to provide adequate nutrients, and Dr. Moske and Dr. Dass are liable because they are disregarding menu restrictions for diabetics by serving Brown high carbohydrate foods three times a day. ECF No. 1-1 at 25. He also claims that he was denied the right to be placed on a Halal diet because he is diabetic. *Id*. at 35.

Brown describes the housing unit where he is confined as "dilapidated" with no working toilet, hot water, or air flow vent. ECF No. 1-1 at 37. He claims that there are an inadequate number of showers and sinks with hot water for kitchen and sanitation workers to use throughout three work shifts to bathe regularly, asserting that there are five operational showers out of 12 for 96 men to use in housing unit 14. *Id*. at 38. He describes sewage back-ups in the housing units, and inadequate clean-up of the sewage overflow into the common areas and into the cells of

[1] Review of the signatures reveals that some are duplicates and some do not have identification numbers and cannot be accurately identified.

detainees. Brown states that the department heads make official visits every Tuesday to every housing unit and are clearly aware of the lack of sanitation in the housing units.

## II. ANALYSIS

Title 28, United States Code, Sections 1915(e)(2)(B) and 1915A require this Court to screen and dismiss any complaint that (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b); *see also Lomax v. Ortiz-Marquez*, 590 U.S. ___, 140 S.Ct. 1721 (2020). In addition, it is well-settled law that complaint allegations must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002) (internal quotation marks omitted). Under Federal Rule of Civil Procedure 8(a), a pleading that sets forth a claim for relief shall contain "(1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought . . . ." Each "allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007)). Application of these general requirements to Brown's pleadings requires dismissal of some claims and an amended complaint regarding others.

### A. Standing

To the extent that Brown is attempting to raise claims on behalf of other detainees confined to PGCDC, he is not permitted to do so. He has no standing to assert generalized grievances, nor may he assert particularized claims on behalf of others. "[A]t an irreducible minimum, Article III

requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant and that the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." *Valley Forge Christian College v. Americans United for Separation of Church & State*, 454 U.S. 464, 472 (1982) (citations and internal quotation marks omitted); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992). To state a civil rights claim, a prisoner must allege that he, himself, sustained a deprivation of right, privilege, or immunity secured by Constitution or federal law. *See Inmates v. Owens*, 561 F.2d 560, 563 (4th Cir. 1977). To demonstrate standing, a plaintiff "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984), *abrogated on other grounds by Lexmark Intern., Inc. v. Static Control Components, Inc.*, 134 S.Ct. 1377 (2014)).

To the extent Brown is attempting to initiate a class action lawsuit, the Fourth Circuit has consistently held that "this circuit does not certify a class where a pro se litigant will act as representative of that class." *Fowler v. Lee*, 18 F. App'x 164 (4th Cir. 2001) (citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975)). The Court notes that Brown has filed a motion for class certification and to appoint counsel in both *Brown I* and *Brown II*. "A pro se prisoner does not have a general right to counsel in a [42 U.S.C.] § 1983 action." *Evans v. Kuplinski*, 713 F. App'x 167, 170 (4th Cir. 2017). A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is discretionary and may be exercised where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779 (4th Cir. 1975); *Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987); *Branch v. Cole*, 686 F.2d 264 (5th Cir. 1982). Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present

it." *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel). As explained in Parts II.B and II.C below, Brown has failed to demonstrate he has any colorable claims for class-wide relief that would justify appointment of class counsel. Unless Brown can retain counsel and satisfy the requirements of Federal Rule of Civil Procedure 23 for certifying a class action, this case cannot proceed as one.

If, however, Brown has included the signatures of other detainees with his pleadings because they all intended to file a joint complaint raising the same or similar claims as Brown, the 48 detainees who signed the pleading will need to clarify that this is their intent. *See Ellis v. Werfel*, 86 F.4th 1032, 1037 (4th Cir. 2023) (finding insufficient support for the conclusion that lead plaintiff was filing impermissible class action where individual plaintiffs paid the filing fee and had separately signed the pleadings). Any of the 48 detainees who signed and intend to proceed with this civil action will be required to sign the amended complaint and endorse it as a joint pleading.

Notably, however, joint plaintiffs are not immunized from earning a "strike" under the Prison Litigation Reform Act ("PLRA") for filing a complaint that is dismissed in its entirety for failure to state a claim under the provisions of 28 U.S.C. § 1915(g). *See Boriboune v. Berge*, 391 F.3d 852, 855–56 (7th Cir. 2004) (noting the sound practice of warning joint plaintiffs of the risk of sanctions under Federal Rule of Civil Procedure 11[2] as well as 28 U.S.C. § 1915(g) because

---

[2] Fed. R. of Civ. P. 11(b) provides that:

> By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

they will be held accountable for their co-plaintiffs' claims). The joint plaintiffs must be reminded that, under 28 U.S.C. § 1915(g), they will not be granted *in forma pauperis* status if they have "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it … fails to state a claim upon which relief may be granted, unless" they can establish they are "under imminent danger of serious physical injury."

Any individual detainee who joins this civil action must either pay the full $405 filing fee or file a motion to proceed *in forma pauperis* bearing his original signature. *See Hubbard v. Haley*, 262 F.3d 1194, 1198 (11th Cir. 2001) (holding that the plain language of the PLRA requires that each prisoner litigant proceeding *in forma pauperis* pay the full filing fee in monthly increments).

**B. Access to Administrative Remedies**

Brown's claim regarding access to administrative remedies must be dismissed in its entirety. While Brown is correct that exhaustion of administrative remedies is a prerequisite to filing suit under the PLRA, 42 U.S.C. § 1997e(a), before an action concerning prison conditions may be filed by a prisoner, the failure to exhaust is "an affirmative defense that should be pleaded

---

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Under Fed. R. Civ. Proc. 11(c)(1) this court may "impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation."

or otherwise properly raised by the defendant." *Anderson v. XYZ Corr. Health Serv., Inc.*, 407 F.3d 674, 683 (4th Cir. 2005). To the extent that a prisoner's attempts to exhaust the administrative remedy process are thwarted by prison officials' misconduct, that evidence may be presented in response to the affirmative defense. *Id*. at 682. It is well established in this District that "prisoners have no constitutional right to participate in an institutional grievance procedure[.]" *Burkey v. Baltimore Cnty.*, Civ. No. GJH-20-2006, 2021 WL 3857814, at *11 n.10 (D. Md. Aug. 30, 2021) (quoting *Kitchen v. Peguese*, Civ. No. DKC-05-466, 2005 WL 4827386, at *3 (D. Md. 2005), *aff'd*, 180 F. App'x 443 (4th Cir. 2006)). Therefore, "an inability to access the administrative remedy procedure based on an alleged refusal by prison officials to enforce the rules governing the process does not run afoul of the due process clause." *Id.* (quoting *Allen v. W. Corr. Inst.*, Civ. No. ELH-15-3498, 2017 WL 3607821, at *25 (D. Md. Aug. 21, 2017)); *see also Young-Bey v. B.A. Daddysboy, COS*, Civ. No. JFM-15-3642, 2017 WL 3475667, at *10 (D. Md. Aug. 10, 2017); *Resper v. Schurg*, Civ. No. PJM-13-1278, 2014 WL 3345131, at *3 (D. Md. July 7, 2014). The Supreme Court clarified that administrative remedies are "unavailable" and an inmate's duty to exhaust "does not come into play" when (1) officers are consistently unable or unwilling to provide relief to aggrieved prisoners; (2) the administrative scheme is so opaque or complex that it is not practicable; or (3) prison administrators thwart prisoners from participating in the process through intimidation, misrepresentation, or a scheme of exclusion. *Ross v. Blake*, 578 U.S. 632, 643–44 (2016). For these reasons, Brown's claims regarding officers' failure to provide grievance forms or otherwise comply with the procedures in place governing the detention center's grievance procedure are dismissed.

**C. Access to Courts**

Brown's claims regarding the alleged denial of his requests to access the law library, the alleged failure to provide him with copies of cases and other legal materials, and the alleged failure to send out his legal mail are all claims that imply a violation of the First Amendment right of access to courts. *See Bounds v. Smith*, 430 U.S. 817, 821 (1977). However,

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996). To the extent that local detention centers are designed to incarcerate detainees for "relatively short periods[,]" there may be "no obligation to provide access to the courts." *Strickler v. Waters*, 989 F.2d 1375, 1386–87 (4th Cir. 1993) (citing *Williams v. Leeke*, 584 F.2d 1336, 1344 n. 1 (4th Cir. 1978)).

In any event, Brown and any other plaintiff who choose to pursue a claim must show that he personally has suffered an actual injury as the result of the asserted wrongful conduct. *See Strickler*, 989 F.2d at 1382 (holding pretrial detainee must show actual injury). "Ultimately, a prisoner wishing to establish an unconstitutional burden on his right of access to the courts must show 'actual injury' to 'the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts.'" *O'Dell v. Netherland*, 112 F.3d 773, 776 (4th Cir. 1997) (quoting *Lewis*, 518 U.S. at 355). "The requirement that an inmate alleging a violation of *Bounds* must show actual injury derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches." *Lewis*, 518 U.S. at 349. Actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial of access to the courts. *Id*. at 399.

Here, Brown fails to identify with any clarity or specificity any actual injury that he has endured to his ability to challenge any sentence or conditions of confinement. Brown identifies a motion he claims he tried to file in his state criminal case that was not received due to alleged interference, but Brown is represented by counsel in his criminal case[3] and does not have a right to file pro se motions in that case. As presented, his access-to-courts claims must be dismissed.

**D. Other Claims**

The claims asserted in *Brown II* for which Brown will be given an opportunity to file an amended complaint are his claims that (1) he was denied a Halal diet or was otherwise denied opportunities to practice his religious faith; (2) medical care at PGCDC does not meet constitutional standards in his particular case; and (3) the conditions in his housing unit are so unsanitary that they amount to punishment *and* have caused him an injury.

Religious practices in prison may be lawfully restricted where the restriction in question is related to legitimate penological objectives. *See Turner v. Safely*, 482 U.S. 78, 89–91 (1987). Failure to accommodate religious dietary needs, when that failure is the result of intentional conduct, constitutes a substantial burden on the free practice of religion under the First Amendment's Free Exercise Clause and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). *See Lovelace v. Lee*, 472 F.3d 174, 187–89 (4th Cir. 2006); *cf. id.* at 201 ("[N]egligent acts by officials causing unintended denials of religious rights do not violate the Free Exercise Clause."). "[A] prisoner's request for an accommodation must be sincerely based on a religious belief and not some other motivation." *Holt v. Hobbs*, 574 U.S. 352, 360–61 (2015). Prison authorities are permitted to test the sincerity of a religious belief that is being

[3] Pursuant to Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."

accommodated. *See Cutter v. Wilkinson*, 544 U.S. 709, 725, n.13 (2005) ("[P]rison officials may appropriately question whether a prisoner's religiosity . . . is authentic."). Brown's claim that he has been denied a Halal diet due to concerns about his health appears to challenge a restriction with a legitimate underlying objective. *See* ECF No. 1-1 at 35. If there are additional facts to support his claim that this restriction is a violation of his right to practice his religion freely, he must include those facts in an amended complaint.

To state a constitutional claim regarding medical care, Brown must allege facts showing that he has a serious medical need that required medical intervention and the named defendants exhibited deliberate indifference to that need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or to ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834–37 (1994); *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Here, Brown alleges that the food service provider is negligent in providing too many carbohydrates to him as a diabetic and that Drs. Moske and. Dass are liable because they have not supervised the menu. ECF No. 1-1 at 25. A constitutional violation requires more than mere negligence. *See Grayson v. Peed*, 195 F.3d 692, 695–96 (4th Cir. 1999) ("Constitution is designed to deal with deprivations of rights, not errors in judgment . . . ."). Further, Brown provides no factual allegation establishing that Drs. Moske and Dass had any supervisory authority over Summit Food Service employees, and, even if they did, Brown has not alleged enough facts to establish supervisory liability. Liability of supervisory officials "is not based on ordinary principles of respondeat superior, but rather is premised on 'a recognition that

supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). To the extent Brown has omitted these facts, he must include them in the amended complaint.

Brown's conditions-of-confinement claim also requires an allegation of intentional conduct—not negligence, as stated in his complaint. *See* ECF No. 1-1 at 37. To establish a sufficiently culpable state of mind, there must be evidence that a known excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson v. Seiter*, 501 U.S. 294, 298–99 (1991). Further, conditions that are merely "restrictive [or] even harsh . . . are part of the penalty that criminal offenders pay for their offenses against society" and do not amount to a constitutional violation. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The potential for harm may not amount to the imposition of cruel and unusual punishment where a plaintiff does not allege facts establishing a significant, serious physical or psychological injury. *See Strickler v. Waters*, 989 F.2d 1375, 1381 (4th Cir. 1993). Here, Brown asserts obliquely that various conditions with the plumbing are unsanitary and *could* cause disease and have caused "respiratory issues," but he does not specifically allege that he has suffered an injury caused by the conditions described. ECF No. 1-1 at 38–39. To the extent that he has not included facts of an injury caused by the alleged conditions in his complaint, he must include them in the amended complaint.

For each of these claims Brown must also include facts such as the names of the people who are responsible for the alleged wrongdoing, the date(s) of the alleged incidents, and the harm that he has suffered as a result. Brown is reminded that legal conclusions will not suffice; therefore, the inclusion of lengthy legal argumentation will not ensure that his amended complaint meets the

requirements of this Court's Order or Federal Rule of Civil Procedure 8(a). Brown is reminded that a complaint requires a short and plain statement of the claim showing that he is entitled to relief.[4] Further, to allege that an officer violated his constitutional rights, "the complaint must make defendant-specific allegations. "The allegations must be particular enough to allow one to infer what each defendant did and knew." *Rice v. Adams*, 172 F.4th 428, 432 (4th Cir. 2026) (citing *Iqbal*, 556 U.S. at 678–79). If the amended complaint does not meet all of these requirements, then *Brown II* will be dismissed.

To the extent that the 48 detainees whose signatures are included with Brown's complaint intend to file a joint complaint, they may only do so on claims that meet the standard for joinder under Federal Rule of Civil Procedure 20. Specifically, plaintiffs may join a complaint in one action if they assert any right to relief based on the same "transaction, occurrence, or series of transactions or occurrences; and . . . any question of law or fact common to all plaintiffs will arise in the action." Rule 20(a)(1). If the potential joint plaintiffs are satisfied that they can meet that standard and want to join this action, they must sign the amended complaint and file their own individual motions to proceed *in forma pauperis* bearing their signatures. It is incumbent upon Brown to secure those signatures and to ensure the joint plaintiffs file their own motions to proceed *in forma pauperis*.

## III. CONCLUSION

By separate Order, which follows, *Brown I* (Civil Action No. MJM-25-3301) will be dismissed, and the pending motions therein denied without prejudice as moot. In *Brown II* (Civil Action No. MJM-26-1183), Brown will be granted 28 days from the date of this Memorandum

---

[4] "Pleadings should be no longer than necessary and . . . shall not exceed forty (40) pages in length." Local R. 103.1(d) (D. Md. 2025).

Opinion and the accompanying Order to file an amended complaint regarding his claims as outlined herein. The Clerk will provide him with a blank 42 U.S.C. § 1983 complaint form on which to file his amended complaint. Brown is forewarned that failure to file an amended complaint as required will result in dismissal of *Brown II* without prejudice and without further notice. Brown may secure signatures of any other plaintiff who has had the opportunity to read this Memorandum Opinion and consider the standard that must be met before signing the amended complaint.

_August 25, 2026___
Date

_____/S/__________________
Matthew J. Maddox
United States District Judge